UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:16-cv-14476-ROSENBERG/MAYNARD

STEVEN KRAUS,

    Plaintiff,

v.

MARTIN COUNTY SHERIFF'S OFFICE *et al.*,

    Defendants.

_____/

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT FILED BY DEFENDANTS GARGAN, SANSONE, AND SNYDER

Plaintiff Steven Kraus was arrested for driving under the influence by the Florida Highway Patrol on October 20, 2012 and was transported to the Martin County Jail for processing. At the jail, Defendants Michael Gargan and David Sansone, officers with the Martin County Sheriff's Office, began booking Plaintiff. The handcuffs were removed from Plaintiff and he was instructed to put his hands on the booking counter in front of him. During the booking process, Plaintiff removed his left hand from the booking counter and turned his body toward Defendant Gargan. Defendant Gargan responded by pushing Plaintiff's head into the booking counter and securing his left arm; Defendant Sansone secured Plaintiff's right arm in an arm bar. Plaintiff suffered bruising and a broken right arm as a result. The Amended Complaint contains claims against Defendants Gargan and Sansone in their individual capacities and against Defendant Sheriff William Snyder in his official capacity as the Sheriff of Martin County. All three Defendants moved for summary judgment. The motions are now ripe. The Court has considered all relevant filings and heard argument in this matter on September 20, 2017. Defendant Gargan's Motion for Summary Judgment is **GRANTED**, Defendant Sansone's

Motion for Summary Judgment is **GRANTED**, and Defendant Snyder's Motion for Summary Judgment is **GRANTED**.

 I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a

sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

Here, Plaintiff cites several cases to remind the Court of its duty to take the facts in the light most favorable to the nonmoving party. DE 35 at 3–5 (citing *Madura v. City of North Miami Beach, Fla.*, 517 F. App'x 847, 849–50 (11th Cir. 2013)); *id.* at 6 (*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004)). Although it is true that the Court must take the facts in the light most favorable to Plaintiff, this case is slightly different from those cited by Plaintiff because of the existence of a video of the incident. Thus, the Court has ability to note any discrepancies between the parties' testimony and the video. The Court, of course, resolves any ambiguities in the video in favor of the Plaintiff, as it must at the summary judgment stage.

## II. BACKGROUND

Plaintiff Steven Kraus was arrested and charged with misdemeanor driving under the influence by the Florida Highway Patrol on October 20, 2012. DE 42 ¶ 1. After his arrest, Trooper Weber transported Plaintiff to the Martin County Jail for processing. *Id.* ¶ 2. Plaintiff told Trooper Weber to "just shoot me" and "I would love for you to shoot me right now. I don't give a shit. You can say I tried to get away." Ex. C-DUI Video, 6:41:32–6:41:42, 7:05:15–7:15:35; DE 24-2 at 25:12–22.

At the jail, Plaintiff's handcuffs were removed and Plaintiff was asked to put his hands on the booking counter in front of him. DE 42 ¶ 3; DE 24-2 at 30:6–9. One of the defendants, Deputy Michael Gargan, began the booking process by instructing Plaintiff to remove various personal items. DE 22-2 at 24–25; DE 24-2 at 30:1–4. One of the other defendants, Sergeant

3

David Sansone, was also in close proximity to Plaintiff. DE 22-2 at 26–27; DE 24-2 at 30:21–25. According to Plaintiff, the officers made derogatory comments to Plaintiff about his sexual orientation during the booking process. DE 42 ¶ 5; DE 22-2 at 30–31; DE 24-2 at 33:1–21.

The parties disagree about whether Plaintiff was being compliant during the booking process. Plaintiff admitted that he was angry and that he threw his belt and necklace on the booking counter. DE 27-2 at 32:9–13, 17–25; DE 24-2 at 32:11–25. According to Plaintiff, he was instructed to remove his shoes, he complied, and then he was yelled at to put his hands back on the counter. DE 42 ¶ 6; DE 24-2 at 33:7–12. He then turned towards Defendant Gargan. DE 42 ¶ 7; DE 24-2 at 33:18–34:6. According to Defendant Gargan, Plaintiff was agitated during the booking process and "tensed up his hands a couple of times, rolled his hands into a fist." DE 27-4 at 26:1–3.

A camera recorded the booking process. The video supports the officers' description of the events. The video shows Plaintiff's first act of noncompliance when he removes his hands from the booking counter and turns towards Defendant Gargan. Ex. G, Booking Video: Intake, 7:33:56–7:33:57. The video then shows Defendant Gargan put his hand on Plaintiff's back, *id.* at 7:33:57–7:33:58, and Plaintiff place his hands back on the booking counter. Plaintiff then removes his shoes as instructed. *Id.* at 7:34:00–7:34:17. After removing his shoes, he places his hands back on the booking counter for a few seconds. *Id.* at 7:34:18. Then, Plaintiff again removes his hands from the booking counter and turns his body to face Defendant Gargan, at which point Defendants Gargan and Sansone react. *Id.* at 7:34:50–7:35:12. Defendant Gargan grabs Plaintiff's left harm, braces his legs behind Plaintiff, grabs Plaintiff's head, and moves Plaintiff's upper body towards the booking counter. *Id.* at 7:34:50–7:35:12; DE 27 ¶ 7; DE 42 ¶

7. Defendant Sansone secures Plaintiff's right arm behind Plaintiff's back and put it in an "arm bar." DE 27 ¶ 7; DE 42 ¶ 7.

As a result of Defendant Gargan's action, Plaintiff suffered bruises. DE 42 ¶ 7; DE 24-2 at 37:20–21. As a result of Defendant Sansone's actions, Plaintiff's arm was broken. DE 42 ¶ 7; DE 24-2 at 36:16–20. Plaintiff was taken to Stuart Memorial Hospital where it was determined that the humurus bone in his right arm had been broken. *Id.* Prior to being taken to the hospital, Plaintiff was subjected to a breathalyzer test which showed that his blood alcohol level was .151–.156. DE 42 ¶ 10–11. At the hospital, his arm was placed in a sling. *Id.* ¶ 11; DE 24-2 at 50:23.

Plaintiff was returned to the jail and placed in a cell. DE 42 ¶ 13; DE 24-2 at 51:10–12. According to a nurse at the jail, Plaintiff made suicidal statements to her when he returned from the hospital. DE 27-6 at 14–15. Plaintiff denies making any suicidal statements when he returned to the jail from the hospital. DE 27 ¶ 13–15; DE 24-2 at 53:13–23. Nurse Jenkins placed Plaintiff on suicide watch, DE 42 ¶ 15, and the sling was removed. *Id.* ¶ 18; DE 24-2 at 56:14–18. The Defendants assert that the sling was removed per Sheriff's Standard Operating Procedure 6.04-3, which requires removal of all personal items of an arrestee who is placed on suicide watch. DE 27 ¶ 15. Plaintiff asserts that "Nurse Jenkins did not make a lawful determination [to place him on suicide watch], rather she made such determination based on a fabrication. [Kraus Depo. 55:20-25; 56:3-7]. During this encounter, the sling prescribed at the Hospital was taken away from Mr. Kraus in clear derogation of medical orders." DE 42 ¶ 18. It is indisputable, however, that Plaintiff made statements about wanting to die to Trooper Weber. *See* Ex. C-DUI Video, 6:41:32–6:41:42, 7:05:15–7:15:35.

Several hours later, Plaintiff was released from the jail. DE 42 ¶ 22. Upon release, he was transported to Port St. Lucie Medical Center and was told that he was institutionalized pursuant to Florida's Baker Act. *Id.* ¶ 23; DE 24-2 at 60:19–61:7. He had to undergo surgery to repair his broken arm. DE 42 ¶ 23; DE 24-2 at 63:3–22.

*Martin County Sheriff's Office's Policies and Past Use of Force*

Martin County Sheriff's Office has a policy regarding the use of physical force. It provides that:

> The use of physical force (less lethal force) shall be restricted to instances of justifiable self-defense, protection of others, prevention of escapes, to quell a disturbance or when an inmate exercises resistance to a lawful command. . . . A written report shall be prepared following all response to resistance. The report shall be submitted to the Department Director via the chain of command. An inmate involved in a response to resistance incident . . . shall be examined by Medical Services following the incident. An inmate injured in an incident shall receive an immediate medical examination and treatment. The results of the medical examination will also be made a part of the Response to Resistance Report.

DE 27-15. The Sheriff's Office also has a policy dealing with inmates who have been placed on suicide watch. It requires removing all personal items of arrestees on suicide watch to ensure that they cannot harm themselves. DE 27-12.

Defendant Sansone had one incident where he was found to have used excessive force. The incident occurred in 1994 and he received a suspension without pay. DE 42-12. Defendant Sansone had to complete several use of force reports during his tenure with the Martin County Sheriff's Office. *See* DE 42-17. Defendant Sansone also committed several infractions for which he was disciplined, including sleeping on the job and damaging a police car. *See* DE 42-7.

## III. ANALYSIS

### a. 42 U.S.C. § 1983 Claims of Excessive Force in Violation of the Fourteenth Amendment Against Defendants Gargan and Sansone

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "If [the] excessive force claim arises out of events occurring during an arrest, [investigatory stop, or seizure,] the Fourth Amendment governs. If [the] claim arises out of events occurring while plaintiff is a pretrial detainee, the Fourteenth Amendment governs." *Fennell v. Gilstrap*, 559 F.3d 1212, 1215 n.4 (11th Cir. 2009) (citing *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004)). "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled" in the Eleventh Circuit. *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005).

Because Plaintiff's arrest had been completed, the Court's analysis focuses on whether Defendants' actions violated Plaintiff's Fourteenth Amendment rights. See *Fennell*, 559 F.3d at 1215 n.4 (citing *Garrett*, 378 F.3d at 1279 n.11). In the hearing on the motions for summary judgment, Plaintiff acknowledged that he was proceeding under the Fourteenth Amendment as the relevant constitutional amendment for his excessive force claim.

A government official may be immune from suit under the doctrine of qualified immunity. The Supreme Court and the Eleventh Circuit have stressed the importance of qualified immunity "because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial." *Gaines v. Wardynski*, No. 16-15583, 2017 WL 4173625, at *1 (11th Cir. Sept. 21, 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017)).

Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). A government official acts within his discretionary authority if the challenged actions were (1) "undertaken pursuant to the performance of his duties" and (2) "within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).

After determining that the government official was acting within his discretionary authority, there is a two-step inquiry to determine if an official is entitled to qualified immunity. The two inquiries are "whether the plaintiff's allegations, if true, establish a constitutional violation" and "[i]f the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated is 'clearly established.'" *Barnett v. City of Florence*, 409 F. App'x 266, 270 (11th Cir. 2010). The two inquiries can be done in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To prove a constitutional violation under the Fourteenth Amendment's Due Process Clause, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Objective reasonableness turns on the "facts and circumstances of each particular case," *Graham,* 490 U.S. at 396, and the courts recognize that officers must make quick decisions under tense circumstances in running a prison, *see Kingsley*, 135 S. Ct. at 2474. The following considerations "may bear on the reasonableness or unreasonableness of the force used:" (1) "the relationship between the need for the use of force and the amount of force used;" (2) "the extent of the plaintiff's injury;" (3) "any effort made by

the officer to temper or to limit the amount of force;" (4) "the severity of the security problem at issue;" (5) "the threat reasonably perceived by the officer;" and (6) "whether the plaintiff was actively resisting." *Id.* at 2473.

"A plaintiff can show the constitutional right violated was clearly established in three different ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Shuford v. Conway*, 666 F. App'x 811, 817 (11th Cir. 2016). To determine if a right was clearly established at the time of the violation, courts in the Eleventh Circuit look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose." *Coffin v. Brandau,* 642 F.3d 999, 1013 (11th Cir. 2011). Cases under the second or third prong are rare because "[t]hey exist where the words of the federal statute or constitutional provision at issue are 'so clear and the conduct so bad that case law is not needed to establish that conduct cannot be lawful,' or where … 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Gaines*, 2017 WL 4173625, at *2 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1250–51 (11th Cir. 2002)).

With respect to the first manner of proving that that a constitutional right was clearly established, the case law must be "materially similar," *Jones v. Fransen*, 857 F.3d 843, 851–52 (11th Cir. 2017) and "close enough to have put 'the statutory or constitutional question beyond debate.'" *Gaines*, 2017 WL 4173625, at *4 (quoting *Aschcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The court has stated many times that 'if case law, in factual terms, has not staked out a

9

bright line, qualified immunity always protects the defendant.'" *Id.* at \*6 (quoting *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)).

In looking at what is clearly established, the Court is bound by the law at the time of the incident. *Shuford*, 666 F. App'x at 817. Pre-*Kingsley*, the Eleventh Circuit required the plaintiff in excessive force claims to show that the defendant acted with a malicious and sadistic purpose to inflict harm. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002); *Jacoby v. Baldwin Cty., et al.*, 666 F. App'x 759, 765 (11th Cir. 2016) ("[I]n order to determine whether the clearly established requirement is met in this case, we look to pre-*Kingsley* case law, which applied the old 'sadistic or malicious' standard for excessive force."). Thus, a plaintiff alleging a constitutional violation occurring before the *Kingsley* decision would have to show that, at the time of the incident, it was clearly established that the defendant's actions were sadistic and malicious.

As the Court can undertake the two inquiries in either order, *Pearson*, 555 U.S. at 236, the Court's analysis begins and ends with determining if the right Defendants Gargan and Sansone allegedly violated was clearly established at the time of the incident. Defendants Gargan and Sansone are entitled to qualified immunity because it was not clearly established that either of their actions constituted excessive force that was sadistic or malicious in violation of the Fourteenth Amendment. As a threshold issue, there is no dispute that Defendants Gargan and Sansone were acting in their discretionary authority. *See Rich*, 841 F.2d at 1564. Thus, the burden falls to the Plaintiff to prove that the constitutional right was clearly established. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009) (per curiam).

Plaintiff points to *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) to satisfy his burden of establishing that the constitutional right was clearly established. *Kingsland*

involved a question of whether the officer had made deliberately false statements on an arrest affidavit when arresting Kingsland after she had been involved in a car accident with a police officer. Although *Kingsland* provides *dicta* about the policy rationale behind qualified immunity, *id.* at 1233, the case is irrelevant in meeting Plaintiff's burden to demonstrate that either of the officer's actions—Defendant Gargan's actions of securing an unsecured and noncompliant arrestee by pushing his head into the booking counter and securing his arm or Defendant Sansone's action of assisting in securing an unsecured and noncompliant arrestee by putting his arm into an arm bar—violated a clearly established constitutional right. *See Shuford*, 666 F. App'x at 817; *Gaines*, 2017 WL 4173625, at *6.

Plaintiff has not provided the Court and the Court has not located case law "with indistinguishable facts clearly establishing the constitutional right." *Id.* at 817. Other courts have noted the absence of case law stating that the use of an arm bar resulting in minor injuries violates a constitutional right and, thus, the maneuver could not be a violation of a clearly established right. *See, e.g.*, *Norwood v. Zawadzi*, No. 1:11-cv-00176-MP-GRJ, 2014 WL 1334011, at *6 (N.D. Fla. Mar. 31, 2014). Similarly, the Plaintiff has not provided and the Court has not located case law establishing that the use of an arm bar to assist a fellow officer in securing an unsecured and noncompliant arrestee is a violation of a constitutional right, even if the arm-bar technique results in injuries.

Similarly, Plaintiff has not provided and the Court has not located "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right." *See Shuford*, 666 F. App'x. at 817. And, Defendants Gargan and Sansone's conduct does not fall within the narrow case of "conduct [that is] so egregious that a constitutional right was clearly violated, even in the total absence of case law." *See id.* Defendants Gargan and Sansone's

actions, thus, did not violate a clearly established constitutional right and they are entitled to qualified immunity. Defendants Gargan and Sansone are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claims.

### b. State Law Battery Claims Against Defendants Gargan and Sansone

Battery in Florida is defined as "the intentional infliction of a harmful or offensive contact upon the person of another." *Sullivan v. Atl. Sav. & Loan Ass'n*, 454 So.2d 52, 54 (Fla. Dist. Ct. App. 1984). Police officers, however, receive a presumption of good faith and are only liable for battery if they use excessive force. *See City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. Dist. Ct. App. 1996). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.*

Florida's statute waiving sovereign immunity, Fla. Sta. § 768.28(9)(a) (2017), states:

> "No officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event or omission of action in the scope of her or his employment function, unless such officer, employee, or agent acted in bath faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

Wanton and willful disregard "connotes conduct much more reprehensible and unacceptable than mere intentional conduct." *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. Dist. App. 1987).

Defendants Gargan and Sansone are entitled to immunity under Fla. Stat. § 768.28(9)(a). Plaintiff argues that his deposition testimony that the officers made derogatory comments about his sexuality creates a dispute of fact about whether the officer's behavior was wanton and willful. DE 34 at 10–11; DE 35 at 11–12. *See* 27-2 at 33:1–21 (stating that one of the officers said "Fags will celebrate anything" and noting another derogatory comment). However, derogatory language alone does not necessarily transform an acceptable use of force into one that

12

was wanton and willful. *See Evans v. Stephens*, 407 F.3d 1272, 1281–82 (11th Cir. 2005) (noting that it was not words alone, but rather the totality of the circumstances, that showed a constitutional violation); *Bozeman v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) (stating that the officers' threatening language alone was not determinative of bad faith). Even accepting Plaintiff's testimony that he was subjected to derogatory comments as true, there is simply insufficient evidence in the record for a reasonable jury to find that Defendants Gargan and Sansone acted in a wanton and willful manner, particularly in light of the objective video evidence in this case. Therefore, Defendants Gargan and Sansone are entitled to summary judgment on Plaintiff's state law battery claims.

### c. Claims Against Defendant Snyder in His Official Capacity

Suing a municipal official is the functional equivalent of suing the municipality. *Owens v. Fulton Cty.*, 877 F.2d 947, 951 n.5 (11th Cir. 1989). Under 42 U.S.C. § 1983, a municipality cannot be held liable under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 691 (1978). Rather, municipalities can be found liable under § 1983 only where the plaintiff shows "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997), *cert. denied*, 522 U.S. 1075 (1988).

### i. 42 U.S.C. § 1983 Claim of Excessive Force in Violation of the Fourteenth Amendment Against Defendant Snyder in His Official Capacity

To prove a claim of excessive force in violation of his Fourteenth Amendment rights under § 1983 against Defendant Snyder in his official capacity, Plaintiff must prove that there was a policy or custom of excessive use of force at the Martin County Sheriff's Office. The Sheriff's Office has a policy about limiting the use of force. DE 27-15. Thus, Plaintiff has to prove a custom of excessive use of force. There are several ways for a plaintiff to prove the existence of a custom. *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 941 (11th Cir. 2017). Relevant to this case are failure to train or supervise and ratification.

#### a. Failure to Train or Supervise

Liability can be predicated on a failure to train or supervise theory "where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants such that the failure to train can properly be thought of as a city policy or custom . . . ." *Sewell*, 117 F.3d at 489–90 (quoting *City of Canton*, 489 U.S. at 389) (internal quotation omitted). To show deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).

Plaintiff did not provide any evidence "that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *See Gold*, 151 F.3d at 1351. Plaintiff argues that Defendant Sansone had other use of force reports which should have put Defendant Snyder of notice of the need to train him with respect to the use of force. DE 36 at 15. Defendant Gargan had no incidents where he was found to have used excessive force. Defendant Sansone had one incident where he was found to use

excessive force in 1994 and received a suspension without pay for that incident. DE 42 ¶ 25. No reasonable juror could find that this one incident, eighteen years before the incident with Plaintiff, was sufficient to put Defendant Snyder on notice of a need to train with respect to excessive force.

Defendant Sansone's other use of force reports also do not show "a deliberate indifference to the rights of" the arrestees under the care of the Martin County Sheriff's Office. *See Sewell*, 117 F.3d at 489–90 (quoting *City of Canton*, 489 U.S. at 389). Rather, each use of force report includes a "Shift Supervisor's Review" where the supervisor notes that he spoke with the officers and arrestee involved after the incident and, after reviewing the evidence, made a determination about if the use of force was acceptable. *See* DE 42-17. This is not evidence of Defendant Snyder failing to investigate the use of force.

Plaintiff points to the fact that Defendant Sansone had been disciplined several times as evidence of failure to train Defendant Sansone. DE 36 at 15. However, as the record shows, Defendant Sansone's prior infractions included things like sleeping on the job, DE 42-7 at 6, billing too much overtime, *id.* at 9, and damaging a police car, *id.* at 12–16. Defendant Sansone received various disciplinary actions as a result of these incidents.

Even assuming *arguendo* that Defendants Sansone and Gargan used excessive force against Plaintiff, there would be insufficient facts to hold the municipality liable under a theory of failure to train or supervise because "one incident is not enough to create municipal liability." *See Kimbrough v. City of Cocoa,* No. 6:05-cv-471-Orl-31KRS, 2006 WL 3335066, at *4 (M.D. Fla. Nov. 16, 2006). The facts show that the Sherriff's Office responded to each use of force and, thus, there are insufficient facts in the record to show the Sherriff's Office was aware of, and deliberately indifferent to, a custom of using excessive force.

### b. Ratification

Under a ratification theory, a municipality may be held liable "by actively endorsing or approving of the conduct of its employees or officials." *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1189 (11th Cir. 2004). "[W]hen plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before the court can hold the government liable on a ratification theory." *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001). The policymaker must "have had the opportunity to review subordinates' decisions before they become final." *Id.* at 1174. *See Salvato v. Miley*, 790 F.3d 1286, 1295–1298 (11th Cir. 2015) (finding that a single allegation of failure to investigate a deadly shooting was insufficient to hold a municipality liable under a ratification theory).

Plaintiff argues that the investigation in his case was insufficient because he believes that the Response to Resistance Report contained a falsehood about his medical condition. *See* DE 36 at 12 (noting that the report stated that "I/M Kraus was cleared by Medical for Post Response to Resistance with no injuries noted or complained about"). This is insufficient to prove a ratification of the deputies' behavior based on a single incident; Defendant Snyder did not have the opportunity to review Defendants Gargan and Sansone's actions before they acted and ratify their decisions and the basis for their decisions. *See Thomas*, 261 F.3d at 1174 n.12. Thus, Defendant Snyder is entitled to summary judgment on Plaintiff's claim of excessive force against him in his official capacity.

### ii. 42 U.S.C. § 1983 Claim of Deliberate Indifference to a Serious Medical Need Against Defendant Snyder in His Official Capacity

To succeed against a municipality under a theory of deliberate indifference to a serious medical need, a plaintiff must first show that his constitutional rights were violated. A plaintiff must show: (1) "a serious medical need", (2) "that the prison official acted with deliberate indifference to her serious medical need", and (3) "that the injury was caused by the defendant's wrongful action." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Second, because this claim is brought against the municipality, a plaintiff must also prove that "the municipality had a custom or policy that constituted deliberate indifference to that constitutional right," *Denham*, 675 F. App'x at 940 (quoting *McDowell*, 392 F.3d at 1289), and "that the policy or custom caused the violation," *id.* at 941 (quoting *McDowell*, 392 F.2d at 1289).

Defendant Snyder's motion for summary judgment should be granted. Taking the facts in the light most favorable to the Plaintiff, a reasonable jury could not find that (1) the officers acted with a deliberate indifference to Plaintiff's serious medical need, (2) Martin County Sheriff's Office had a policy or custom of deliberate indifference to the serious medical needs of the arrestees under their control, and (3) the policy or custom caused the deliberate indifference to Plaintiff's serious medical need.

Plaintiff did have a serious medical need as defined in *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (stating that a serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (internal quotation marks omitted). His arm was broken and he had seen a physician to receive treatment for his arm. DE 24-2 at 50:6–8, 23.

Plaintiff argues that the removal of the sling shows a deliberate indifference to his serious medical need. DE 36 at 7–8. Defendant Snyder argues that removing the sling was necessary because a medical professional determined that Plaintiff needed to be placed on suicide watch; thus, the sling was removed in accordance with Martin County Corrections Department Standard Operating Procedure Section 6.04 to ensure that Plaintiff could not harm himself with it. DE 28 at 8; *see* DE 27-12 at 5 ("Items or articles (ex. belt, undergarments, and shoes) with which the inmate might injure himself/herself must be removed."). Even assuming *arguendo* that Plaintiff established that the officers were deliberately indifferent to his serious medical need by removing his sling, Plaintiff's claim would still fail because he did not establish that Martin County Sheriff's Office had a policy or custom of deliberate indifference to the serious medical needs of the arrestees under their control, and that the policy or custom caused the deliberate indifference to Plaintiff's serious medical need.

The record is devoid of any evidence of a policy or custom of deliberate indifference to the serious medical needs of arrestees under the control of the Martin County Sheriff's Office. The only policy in the record is Martin County Corrections Department Standard Operating Procedure Section 6.04, which requires the removal of all personal items of arrestees on suicide watch. *See* DE 27-12. This is clearly not a policy of deliberate indifference to the serious medical needs of arrestees; in fact, it is designed to protect the arrestees under the Sheriff's control. If Plaintiff is arguing that there is a custom of deliberate indifference to the serious medical needs of the arrestees under the control of the Martin County Sheriff's Office, the record lacks any evidence to support such a claim. *See Sewell*, 117 F.3d at 489 ("A custom is a practice that is so settled and permanent that it takes on the force of law."). Therefore, Defendant Snyder is entitled to summary judgment on Plaintiff's claim of deliberate indifference to a serious medical need.

## IV. CONCLUSION

For the reasons stated above, Defendant Gargan's Motion for Summary Judgment [DE 23] is **GRANTED**, Defendant Sansone's Motion for Summary Judgment [DE 25] is **GRANTED**, and Defendant Snyder's Motion for Summary Judgment [DE 28] is **GRANTED**. All other pending motions are **DENIED AS MOOT**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida this 26th day of September, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF